FILED
2023 Sep-28  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ANNIE CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-01169-SGC |
| | ) | |
| CIRCUSTRIX, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Annie Campbell filed this employment discrimination action against defendants CircusTrix, LLC, CircusTrix Holdings, LLC, and NextLevl Alabama, LLC (collectively, "CircusTrix" or "Defendants").[2] (Docs. 1, 21).[3] Presently pending is Defendants' motion for summary judgment, which is fully briefed and ripe for adjudication. (Docs. 38-41, 44-47). For the reasons stated below, Defendants' motion will be granted.

---

[1] The parties have unanimously consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 28).

[2] While the relationship between these three entities is not entirely clear from the record, they apparently operated jointly or as a single integrated enterprise. (*See* Doc. 21 at 4-5).

[3] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I.  Standard of Review

Under Rule 56 of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, the non-moving party must go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the case will preclude summary judgment. *Id.* All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## II. Material Facts

CircusTrix, LLC, is a Utah-based entity that owns and operates indoor trampoline parks throughout the United States. (Doc. 39-6 at 9; Doc. 39-11 at 1; Doc. 44-20 at 6). CircusTrix Holdings, LLC, is a holding company with no employees. (Doc. 39-6 at 5). NextLevl, a trampoline park in Birmingham, Alabama, employed Campbell at the end of 2018; while employed with NextLevl, Campbell provided services for various CircusTrix-affiliated companies. (*Id.* at 8, 11, 13). Campbell was employed by Circustrix, LLC, from November 2018 to December 2019. (*Id.* at 12).

During the relevant time, Campbell was 53 years-old and a non-denominational Christian. (Doc. 39-2 at 9, 64). She earned a bachelor's degree in marketing from Auburn University and worked for Texaco Star Enterprises as a territory sales manager for approximately two years. (*Id.* at 4). While employed by Texaco, she was a manager in charge of hiring and firing employees, merchandising, sales, and productivity of eight Texaco locations. (*Id.*) Campbell left the work force for about 10 years to raise her children, returning in 2002. (*Id.* at 5-6). She has worked as a surgical assistant for an oral surgeon, a marketing director for a group of physicians, a physician liaison, a math teacher, and a real estate agent. Each job

Campbell held was in a different city and was generally dictated by the location of her husband's job. (*Id.* at 6-7).

From 2014 to 2018, Campbell began working as an event coordinator for jump parks that were eventually acquired by CircusTrix. (*Id.* at 8). This was initially an independent contractor position. (*Id.* at 16). During this period, CircusTrix continued to acquire new parks, and it also managed several independently-owned parks. (Doc. 39-3 at 8-10).

In 2018, Palladium Equity Group purchased CircusTrix and began standardizing its operations. (*Id.* at 9). CircusTrix retained McKinsey & Company to analyze its business model and make recommendations. (Doc. 39-4 at 17). In April 2019, McKinsey presented its recommendations to CircusTrix. (Doc. 46-1 at 33).

Zane Hansen, a member of the Church of Jesus Christ of Latter-day Saints ("LDS"), was the CircusTrix executive responsible for the event coordinators, who were all independent contractors. (Doc. 39-3 at 12). In November 2018, Hansen told Campbell that CircusTrix planned to eliminate the role of event coordinators and out-source those job duties to Higher Growth, a separately-owned call center. (Doc. 39-2 at 9, 25). At that time, Campbell was the event coordinator for the CircusTrix park with the most events and parties and four of the top eleven parks out of all its parks. (Doc. 44-2). Hansen asked Campbell to manage the process of onboarding the CircusTrix parks to the call center and offered her an annual salary of $65,000,

4

plus the commissions from her parks, until they were onboarded to the call center. (Doc. 39-2 at 9). As the onboarding specialist, Campbell gathered the relevant data, along with photographs of the relevant areas, for each CircusTrix park and created a database with the information and photographs the call center employees would use to book events and parties. (*Id.* at 23). Cordon Robbins, who is 50 years-old and also an LDS member, began to directly supervise Campbell in January 2019. (Doc. 39-2 at 27; Doc. 39-3 at 5).

In 2019, CircusTrix decided to reverse its move to the Higher Growth call center, and Robbins asked Campbell to help rebuild its event coordinator program. (Doc. 39-2 at 29-30; Doc. 39-3 at 16). Robbins told Campbell that if she was successful, she would become the event coordinator manager. (Doc. 39-2 at 30). While Robbins does not recall making any promises to Campbell, he admitted he might have told her there was some "opportunity" associated with her new position because they were building a new program. (Doc. 39-3 at 15).

From July 2019 through December 2019, Campbell rebuilt CircusTrix's event coordinator program. She helped hire and trained new event coordinators and implemented the McKinsey report recommendations. (Doc. 39-2 at 33-34). During this period, Campbell directly managed the new event coordinators, leading weekly telephone conferences and relaying communications between upper management and the event coordinators. (*Id.* at 43).

As part of its recommendations, McKinsey identified birthday parties as an area of potential revenue growth for CircusTrix. (Doc. 39-4 at 19). Looking to implement those recommendations, CircusTrix searched for someone to fill the role of event coordinator manager. (*Id.*). CircusTrix intended this position would be in-person, located at its Provo, Utah corporate office, so that individual would be better able to work with other internal departments, such as marketing, IT, and operations. (*Id.* at 20-21).

In September 2019, Shalay Gold Branch, 41 years-old and LDS-affiliated, applied for an event coordinator position.[4] (Doc. 39-5 at 12). Branch lived in Spanish Fork, Utah, a small town located just south of Provo, Utah. (Doc. 39-13). Branch had not previously worked for any jump parks, but she had 10 years of event management experience, as well as personnel management experience. (Doc. 39-5 at 6-7, 11, 22, 24; Doc. 39-13). When CircusTrix reviewed her resume as part of her application for an event coordinator position, she became a leading candidate for the event coordinator manager. (Doc. 39-4 at 24). Branch was interviewed on three occasions, during which CircusTrix focused on her ability to work with other teams, business and strategic planning, and leadership philosophy. (Doc. 39-5 at 15-17, 24). Ultimately, CircusTrix hired Branch and the decision was jointly made by CEO

---

[4] The parties dispute whether Branch was an active LDS member in 2019; for purposes of summary judgment, the court will view this dispute in the light most favorable to Campbell and assume Branch was LDS-affiliated.

Fernando Eiroa (non-LDS, age unknown); COO Dave Carroll (non-LDS, age unknown); Jordan Wade, the former Vice President of Field Operations (LDS, age unknown); and Robbins. (Doc. 39-4 at 5, 19; Doc. 39-7 at 9). During the interview process, Branch was not asked about her religion or whether she was LDS-affiliated. (Doc. 39-5 at 24).

In December 2019, Robbins told Campbell her position had been eliminated. (Doc. 39-2 at 35). Campbell was upset and responded that she was very proud of the people she hired; Robbins responded that she had done an exceptional job and exceeded expectations. (*Id.*). During his deposition, Wade agreed Campbell did a good job rebuilding the event coordinator program. (Doc. 39-3 at 15; Doc. 39-4 at 17). Robbins then offered Campbell the opportunity to continue in an event coordinator role as an independent contractor. (Doc. 39-2 at 36).

In December 2019, CircusTrix sent a cease-and-desist letter to former employee Jeffrey Lee (LDS, unknown age). (Doc. 39-7 at 7). Lee, who had a non-compete agreement, was opening a competing jump park with Campbell's two sons. (*Id.*). In January 2020, CircusTrix filed suit against Lee in New York to enforce the non-compete agreement, and that litigation resulted in a judgment in favor of CircusTrix. (*Id.*).

In January 2020, Campbell began event coordinating for the jump park owned by her sons, which was located in Chicago. (Doc. 44-10 at 2). In mid-February,

Robbins asked Campbell about this activity and told her it was a conflict of interest. (*Id.*; Doc. 39-3 at 27). When it learned about Campbell's relationship with the other jump park, CircusTrix terminated her as an independent contractor. (Doc. 39-3 at 27). Campbell was never asked to sign an exclusivity or non-disclosure agreement. (Doc. 39-3 at 27). According to Robbins, exclusivity "was just implied that this is who you work for, and, you know, there's certain loyalties there for sure." (*Id.* at 28). Campbell maintains there was no conflict of interest because CircusTrix had no jump parks in Chicago and, therefore, the two companies were not competitors. (*See, e.g.,* Doc. 39-5 at 21). In its EEOC response, CircusTrix stated Robbins believed Campbell was using the same programs and services she created while employed at CircusTrix to benefit the new jump park. (Doc. 35-11 at 2).

On February 20, 2020, after Robbins told Campbell she could no longer work as an independent contractor, Campbell complained to Jason Fisher, CircusTrix's vice president of human resources, that Robbins had promised her the event coordinator manager position, lied to her, misappropriated her materials, and offered full-time employment to the other event coordinators.[5]  (Doc. 44-10). On February 25, 2020, Fisher responded to Campbell and stated:

> As it relates to your performance. You are correct, the termination of your services was not based on performance. We appreciate your past employment and services. When we were made aware you were providing the same service to a competitor [as an independent contractor] we called to confirm, giving

---

[5] The parties do not identify Fisher's age or religious affiliation.

you the benefit of the doubt that you were not. When you confirmed you were, and saw no conflict of interest in doing so, a decision was made to no longer use your services.

. . .

Added to our concern was the fact we were not made aware of or given the chance to determine if you should provide services for us and a competitor, and if it would be a conflict of interest.

(Doc. 44-13).

Following Campbell's termination as an event coordinator, CircusTrix offered the remaining event coordinators full-time employment, as opposed to positions as independent contractors. (Doc. 39-2 at 44; Doc. 44-15). These offers required the event coordinators to agree to devote all professional time and attention to their employment with CircusTrix. (Doc. 44-15). CircusTrix also required the event coordinators to sign nondisclosure agreements. (Doc. 44-17). Campbell was not offered the opportunity to work as a full-time employee. Of the 18 event coordinators CircusTrix transitioned from independent contractors to employees, half lived in Provo, Utah, or the surrounding areas, and 12 were more than 10 years younger than Campbell. (*Id.*)

CircusTrix's March 2021 EEOC position statement acknowledged Campbell was a good performer with no record of misconduct. (Doc. 39-11). CircusTrix maintained it made a business decision to locate the event coordinator manager at the corporate office in Provo and that "it was very clear to all [who] worked with her since 2015, she had no desire and or ability to move from her home in Alabama to

Utah." (*Id.*). CircusTrix also stated that "84% of the population in Provo, Utah are members of the Church of Jesus Christ of Latter-day Saints (LDS) – 'Mormon'. Rural cities outside of Provo have even higher concentrations of LDS people." (*Id.*).

At his August 2022 deposition, Robbins agreed Campbell did a good job accomplishing tasks in her role as an event coordinator, but he believed she had a negative attitude, was not coachable, and was insubordinate. (Doc. 39-3 at 15-16). He did not, however, document any of these issues in writing. (*Id.* at 25). In its January 2022 interrogatory responses, CircusTrix alleged Campbell had a negative attitude, disagreed with decisions (some of which were beyond her role), questioned decisions, and tried to undermine various processes. (Doc. 44-20 at 7-8).

Campbell would have moved to Provo had she been asked to do so. (Doc. 39-2 at 44). She and her husband are "empty nesters," none of their children live in the Birmingham, Alabama area, and two of their three children live in Texas and Illinois. (*Id*. at 9). By the end of 2019, Campbell and her husband had lived in Alabama approximately seven years. (*Id.* at 9).

Campbell brings two counts against Defendants: (1) religious discrimination in violation of Title VII, 42 U.S.C. § 2000e, and (2) age discrimination in violation of both the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA") and the Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-22 ("AADEA"). (Doc. 21).

## III.   Discussion

Title VII makes it unlawful for an employer to refuse "to hire . . . or otherwise to discriminate against any individual [ ] because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA, which protects individuals between the ages of 40 and 70, makes it unlawful for an employer "to refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . ." 29 U.S.C. § 623(a). The AADEA similarly prohibits an employer from discriminating "against an individual with respect to compensation, terms, or privileges of employment, because of the age of the individual." Ala. Code § 21-1-22(1).

A plaintiff may use two, distinct standards of proof to prove a Title VII religious discrimination claim: single-motive and mixed-motive. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). The single-motive standard requires proof religious bias was "the true reason for the adverse action." *See id.* By contrast, the mixed-motive standard requires a plaintiff to prove only that religious bias "'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *See id.* (quoting 42 U.S.C. § 2000e-2(m)).

11

A plaintiff cannot use a mixed-motive theory to prove ADEA violations because the ADEA prohibits discrimination against an employee "'*because of* such individual's age.'" *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quoting 29 U.S.C. § 623(a)(1)); *see also Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010) (recognizing that following *Gross*, there is no "mixed-motive" ADEA case because an ADEA plaintiff must establish she suffered an adverse employment action "because of" her age). Similarly, the AADEA prohibits discrimination "*because of* the age of the individual." *See* Ala. Code § 25-1-22 (emphasis added. Thus, there is no basis by which Campbell can proceed under a mixed-motive theory for her age discrimination claims.

### A. Campbell's single-motive religious and age discrimination claims fail under the McDonnell Douglas framework.

Campbell presents no direct evidence of her single-motive religious and age discrimination claims, and they are subject to the familiar *McDonnell Douglas* framework.[6] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217 (11th Cir. 2019); *Reeves v.*

---

[6] "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of [an impermissible factor] will constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets Of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (internal quotation marks omitted); *compare Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 855 (11th Cir. 2010) (noting the Eleventh Circuit has held that documents stating " 'Fire Early – he is too old'" and " ' Fire Rollins – she is too old'" constitute direct evidence of discrimination), *with Tomczyk v. Jocks & Jills Rests., LLC*, 198 F. App'x 804, 810 (11th Cir. 2006) (holding that use of racially derogatory comments not directly linked to decision to terminate plaintiff served as circumstantial evidence of discrimination at best).

*Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141–42 (2000) (applying *McDonnell Douglas* to ADEA claims); *Robinson v. Alabama Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007) (adopting ADEA evidentiary framework to AADEA claims). The following analysis applies equally to Plaintiff's religion and age claims. *See Lewis*, 918 F.3d at 1217; *Reeves*, 530 U.S. at 141–142; *Robinson*, 964 So. 2d at 1228.

Under the *McDonnell Douglas* framework, a plaintiff must satisfy her *prima facie* case to create an inference of discrimination. *See Lewis*, 918 F.3d at 1221. Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *Id.* This is a burden of production rather than of proof, and it can involve no credibility determination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "It is important to bear in mind, however, that the defendant's burden of rebuttal is exceedingly light; the defendant need not persuade the court that it was actually motivated by the proffered reasons [but] it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (internal citations and quotations omitted). So long as the employer articulates a "clear and reasonably specific" nondiscriminatory basis for its actions, it has discharged its burden. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981).

13

If an employer articulates one or more legitimate, nondiscriminatory reasons for the employment action, the plaintiff must show the proffered reason was pretext for illegal discrimination. *Lewis*, 918 F.3d at 1221. If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot quarrel with the wisdom of the reason but instead must "meet that reason head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). A plaintiff can show pretext by casting sufficient doubt on the employer's proffered reasons to permit a reasonable factfinder to conclude some other reason actually motivated its conduct. *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994). To demonstrate pretext, the plaintiff can also show the proffered reason was false and discrimination was the real reason for the employer's action. *St. Mary's Honor Center*, 509 U.S. at 515.

Rather than arguing Campbell failed to establish a *prima facie* case, CircusTrix moves straight to its legitimate, nondiscriminatory reasons for failing to promote and later terminating Campbell.[7] Because CircusTrix has not analyzed the sufficiency of Campbell's *prima facie* case for either alleged discriminatory action, the court will assume she can put forth evidence to meet her *prima facie* case. The

---

[7] CircusTrix suggests Branch is not a proper comparator for Campbell because Branch was not an LDS member when she was selected as the events coordinator manager. First, as discussed above, the court views this dispute in the light most favorable to Campbell as the non-moving party. Second, this is the only passing reference made to Campbell's *prima facie* case.

burden, therefore, shifts to CircusTrix to articulate a legitimate, nondiscriminatory reason for its adverse employment actions.

### 1. CircusTrix offered legitimate, nondiscriminatory reasons for selecting Branch as the events coordinator manager and later terminating Campbell.

CircusTrix's burden to articulate a legitimate, nondiscriminatory reason for its employment decisions can involve no credibility determination and is "exceedingly light." *See St. Mary's Honor Center*, 509 U.S. at 509; *Perryman*, 698 F.2d at 1142. CircusTrix must only articulate a "clear and reasonably specific" nondiscriminatory basis for its actions. *See Burdine*, 450 U.S. at 258. The burden at this stage is one of production, rather than of proof. *Perryman*, 698 F.2d at 1142.

CircusTrix claims it selected Branch, rather than Campbell, as the event coordinator manager because (1) it wanted this position to be filled with an in-office employee at corporate headquarters in Provo, Utah; (2) Campbell lived in Alabama and CircusTrix did not believe she would be willing to move to Utah; (3) Branch had many years of managerial experience in addition to experience with event planning; and (4) Campbell had a negative attitude and was insubordinate. CircusTrix contends it terminated its relationship with Campbell as an independent contractor because it believed her work for another jump park was a conflict of interest.

These are clear and specific reasons supporting CircusTrix's actions and are well within its business judgment regarding its workforce. Thus, CircusTrix has established legitimate, nondiscriminatory reasons for hiring Branch as is event coordinator manager and terminating Campbell, and Campbell must demonstrate these reasons are pretext for religious and age discrimination.

### 2. There is insufficient evidence for a jury to conclude CircusTrix's proffered reasons are pretext for age or religious discrimination.

To rebut CircusTrix's legitimate, nondiscriminatory reasons for its actions and demonstrate they are pretextual, Campbell must show both that (1) CircusTrix's reasons were false *and* (2) discrimination was the real reason. *See St. Mary's Honor Center*, 509 U.S. at 515. As to CircusTrix's selection of Branch as event coordinator manager, Campbell cannot simply argue she was better qualified than Branch; instead, she must demonstrate the disparities between Branch's qualifications and her own were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" Branch over Campbell. *See Bailey v. City of Huntsville*, 517 F. App'x 857, 863 (11th Cir. 2013) (internal citation omitted). Neither can Campbell show pretext by simply substituting her business judgment for CircusTrix's. *See id.* at 864. Where, as here, "the proffered reason is one that might motivate a reasonable employer," Campbell must directly rebut that reason; she cannot simply quarrel with CircusTrix's reasoning. *See id.* Even if she can demonstrate CircusTrix's reasons are false, Campbell must also show the hiring

and termination decisions were in fact motivated by age or religion. *See St. Mary's Honor Center*, 509 U.S. at 515.

Campbell does not meet this burden. She attacks CircusTrix's proffered explanations on the following grounds: (1) CircusTrix's explanations have evolved, which is circumstantial evidence of pretext; (2) it was unnecessary for the event coordinator manager to be local to Utah because all event coordinators worked remotely and Branch's successors were not local; (3) CircusTrix has no evidence it conducted a national search to fill the event coordinator manager position; (4) Campbell had more extensive experience with CircusTrix, given her tenure there; (5) Campbell was not negative or insubordinate, which is supported by the fact Robbins offered her the opportunity to continue working as an event coordinator; and (6) it was not a conflict of interest for her to work for another jump park because the two companies were not geographic competitors.

Two of these issues—whether the event coordinator manager should be located at the corporate office and whether CircusTrix perceived a conflict in Campbell coordinating events for another jump park—are ones that might easily motivate a reasonable employer and are well within CircusTrix's business judgment. Campbell has offered no evidence these reasons are false, instead simply quarreling with CircusTrix's reasoning. Because the court cannot substitute its or Campbell's business judgment for CircusTrix's, these arguments are rejected.

Campbell contends she was better suited for the job because she had been an event coordinator for CircusTrix for several years and was therefore more familiar with the company. However, she does not dispute that Branch had many years of managerial experience. Based on the record before it, the court cannot conclude Campbell's qualifications are so superior to Branch's "that no reasonable person, in the exercise of impartial judgment, could have chosen" Branch over Campbell. *See Bailey*, 517 F. App'x at 863. CircusTrix believed Branch had superior management experience, which is a legitimate, nondiscriminatory reason for hiring her over Campbell. *See, e.g., Williamson v. Alabama Dep't of Mental Health & Mental Retardation*, No. 21-13274, 2023 WL 5287873, at *8 (11th Cir. Aug. 17, 2023) (plaintiff not selected because defendant believed another candidate had superior supervisory experience, "which is a legitimate, non-discriminatory reason"). At best, Campbell questions CircusTrix's wisdom and business judgment in selecting Branch and ultimately firing her, but this is not enough. CircusTrix was free to promote Branch and fire Campbell "for a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Minard v. Sam's E., Inc.*, No. 21-11494, 2022 WL 854541, at *4 (11th Cir. Mar. 23, 2022).

Campbell's remaining three arguments, viewed in the light most favorable to her, *might* suggest CircusTrix's explanations are unworthy of belief. A claim of pretext can be based on inconsistent and contradictory explanations. *See Jackson v.*

*State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). Nevertheless, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. As the Supreme Court has explained, an employer is entitled to summary judgment "if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

Even if Campbell's arguments are adequate to show CircusTrix's proffered explanation is false, she has not presented evidence sufficient to show its true motive was religious or age discrimination. The only evidence relating to Campbell's age is that Branch and some of the other event coordinators were substantially younger than her. But this fact does not establish animus on the part of the decisionmakers or imply bias in the decision-making process. Further, Campbell offers no evidence of even any stray comments involving religious preference, nor does she suggest she was treated differently because of her religious beliefs before CircusTrix hired Branch. The sum of her evidence relating to her age and religion is: (1) CircusTrix knew her age and that she was not an LDS member, (2) CircusTrix selected Branch, who was younger and LDS-affiliated, and (3) CircusTrix's selection of an event

coordinator manager already local to the corporate office made it more likely to be filled by an LDS member because most local residents were LDS-affiliated.

CircusTrix's supposed knowledge of Campbell's age and religion (or at least her non-LDS status) is not itself sufficient.[8] Further, as discussed above, Campbell has not shown CircusTrix's reasons for selecting Branch were pretext. Finally, Campbell urges the court to find that CircusTrix's location in Utah, where a substantial majority of the population are affiliated with the LDS denomination, is sufficient to suggest discriminatory intent. In mounting this argument, Campbell essentially seeks to substitute geographic demographics for discriminatory intent. She has failed to come forward with any evidence that CircusTrix's preference for an in-person position is based in a religious preference. Neither has she cited any caselaw that would permit this sort of inference.

There is no evidence suggesting CircusTrix would have offered Campbell the event coordinator manager position or permitted her to continue working as an events coordinator for a competing park if she were younger or LDS-affiliated. Simply put, Campbell has failed to present a genuine issue of material fact that CircusTrix's proffered reasons for its actions were pretext for age or religious

---

[8] Campbell does not offer any evidence the decisionmakers knew her religious affiliation. She claims Robbins knew her sons did not go on an LDS mission trip and thus would have known her family was not LDS-affiliated. This is speculative at best.

discrimination. Accordingly, CircusTrix is entitled to summary judgment on Campbell's single-motive claim.

### B. Campbell has not presented sufficient evidence to proceed under a mixed motive theory of religious discrimination.

Campbell also argues she can prove her religious discrimination claim through a mixed-motive framework, which requires her to show illegal bias "was a motivating factor for an adverse employment action, even though other factors also motivated the action." *See Quigg*, 814 F.3d at 1235 (quotation marks omitted). The mixed-motive framework proceeds under 42 U.S.C. § 2000e(m), which provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Unlike single-motive theories, a court may not award damages or require reinstatement, hiring, or promotion under a mixed-motive theory; it may only grant declaratory relief and attorney's fees and costs directly attributable to the mixed-motive claim. *See* 42 U.S.C. § 2000e-5(g)(B).

To succeed under the mixed-motive framework, Campbell must provide either direct or circumstantial evidence, "sufficient to convince a jury" that: (1) CircusTrix took an adverse employment action against her; and (2) her religion was a motivating factor for that adverse action. *See Quigg*, at 1235, 1239. The first prong of this test is undisputed—Campbell's termination, both as an employee and later as

an independent contractor, is an adverse employment action. The remaining question is whether Campbell has come forth with evidence from which a reasonable jury could conclude religion motivated her termination.

In *Quigg,* the plaintiff, a school district superintendent, suggested hiring a woman as assistant superintendent after school board members expressed a preference for a man. *See id.* at 1233. Her contract was then not renewed. Quigg filed suit alleging gender discrimination, arguing the following statements were circumstantial evidence of gender bias: (1) a school board member's statement to a parent that it was "time to put a man in there" while referring to the assistant superintendent position; (2) the recommendation of two school board members that Quigg hire a "tough hatchet man" for the position; (3) a school board member's statement to Quigg that she should consider a male assistant superintendent because it is important to achieve gender balance in the school administration; and (4) a statement made by a school board member shortly after the renewal vote admitting that she voted against Quigg because Quigg "needed a strong male to work under her to handle problems, someone who could get tough." *Id.* at 1241. The Eleventh Circuit agreed, holding that these statements were sufficient circumstantial evidence because they were made "(1) during conversations about whether to renew Quigg's contract, (2) in relative temporal proximity to the vote, and (3) specifically referring to the composition of the office of the superintendent." *Id.* at 1242.

In *Burton v. Gwinnet County School District*, 756 F. App'x 926 (11th Cir. 2018), the plaintiff, a white school principal, alleged the school district discriminated against her based on race, forcing her to resign. She had received a previous disciplinary letter warning her failure to improve her performance could result in termination. After receiving the letter, she was involved in an incident with a disruptive student who slammed a chair against a conference room wall. She told the student's aunt he had left a hole in the wall, but it was later discovered she instructed the assistant principal to use a hammer to create the hole. She discussed the incident with the associate superintendent, who told her, "This could look like you framed children. This is a little black boy. This is two black [assistant principals]." Additionally, the school district's director of human resources told an investigator:

> And see, you know, well, nothing is off the record but think about what was going on at the time. You know, this whole "Black Lives Matter," you know, and with the police, and, you know, all that kind of stuff was swirling as well and so to have a situation where, you know, where . . .
>
> . . .
>
> . . . and the Principal and you've got Administrators and the child was African-American, you know? Of course, Sheldon, he is African-American and the other Assistant Principal, she is African-American. But with a white Principal issuing some directives, you know, to do this and framing this child, you know, you can see how that would come across.

*Id.* at 927. Burton argued these statements—both made by people who lacked the ability to terminate her—were circumstantial evidence her race played a role in her termination. The Eleventh Circuit, however, found the statements were "insufficient

because of their content, not just because of who made them or when they were made." *Id.* at 929. The court found these statements were vague and unrelated specifically to bias in the decision-maker superintendent's decision-making process. *Id.* at 930. Neither did the statements link the superintendent's decision to the concerns expressed by the associate superintendent or the human resources executive. *Id.*

Campbell contends she has presented evidence from which a jury could conclude CircusTrix terminated her based, at least in part, by its desire to have an LDS member fill the event coordinator manager position. As mentioned above, she offers no direct evidence of religious discrimination. Instead, she insists the following is circumstantial evidence from which a jury could conclude CircusTrix was motivated by its preference for LDS employees:

- Robbins promised Campbell the job of event coordinator manager "but reneged after encountering Branch, a substantially younger woman who was almost certainly an LDS member." (Doc. 45 at 21). Campbell argues CircusTrix must have assumed Branch was likely an LDS member because she had attended college in Utah, spent her working career in Utah, and was a resident of Spanish Fork, Utah, which has a high majority LDS population.

- Campbell had worked as an event coordinator for CircusTrix for six years and had trained and managed the new event coordinators for six months, but she was replaced by Branch, who had been a CircusTrix event coordinator for only a month.

- No one asked Campbell whether she would be willing to move to work at corporate headquarters in Provo, Utah or investigated her family circumstances because (she argues) the decision makers assumed only an LDS member would want to move to Provo.

- Robbins knew Campbell's sons "and would, at minimum, have been aware that her college-age sons did not go on a mission trip, which is an obligation for young LDS members." (*Id.*).

- CircusTrix never documented any instances of Campbell's alleged negativity or insubordination, nor did it expressly tell Campbell she could not contract with other jump parks.

First, much of this "evidence" is simply argument and speculation. Second, this is the same evidence Campbell offered in support of her single-motive claim. As explained above, these facts do not establish or otherwise support an inference that Campbell's religion was a motivating factor in CircusTrix's selection of Branch or termination of Campbell. While these facts may establish the religious affiliations of the involved parties, they shed no light on CircusTrix's decision-making process nor demonstrate actual bias. Campbell essentially asks the court to infer bias from knowledge of religious affiliation alone. In the absence of authority permitting such an inference, the court declines to do so.

Campbell has not come forward with enough evidence for a reasonable juror to infer CircusTrix intentionally discriminated against her because of her religion. *See Quigg*, at 1235, 1239. Because she has failed to show her religion was a motivating factor in CircusTrix's decision to select Branch as the event coordinator manager and to terminate its relationship with Campbell as an event coordinator, CircusTrix is entitled to summary judgment on Campbell's mixed-motive claim.

**IV.    Conclusion**

For all the foregoing reasons, CircusTrix is entitled to judgment as a matter of law, and its motion for summary judgment will be granted. A separate order will be entered.

**DONE** this 28th day of September, 2023.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE